MASSACHUSETTS INSTITUTE OF TECHNOLOGY & others vs.
AUGUSTUS P. LORING, JUNIOR, & others.

Essex.   May 9, 10, 1951. — June 29, 1951.

Present: LUMMUS, WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Devise and Legacy*, Power, Remainder, Construction of particular phrase.
   *Power.  Words, "Appointees."*

Under a will which provided that at a designated time a residuary trust
   fund should be paid over to the wife and issue of a nephew of the
   testatrix as he should have appointed by will and that the trust fund
   should be paid over to charities if he did not "leave such appointees
   then living," the charities did not become entitled to the trust fund
   where the nephew by his will appointed the income thereof to his wife
   for her life and she survived him and was living at the designated time,
   although he made no appointment as to the principal.

PETITION IN EQUITY, filed in the Probate Court for the
county of Essex on July 21, 1950.

The case was heard by *Phelan*, J.

*C. C. Cabot*, (*J. B. Ames, H. T. Davis, & J. M. Woolsey,
Jr.*, with him,) for Massachusetts Institute of Technology
and others.

*R. G. Dodge*, (*T. Chase & R. M. Robinson* with him,) for
Augustus P. Loring, Jr., and others.

*T. L. Gannon*, (*F. T. Doyle & F. T. Doyle, Jr.*, with him,)
for Edmund Bailey Frye and others, executors.

LUMMUS, J.  This case involves the interpretation of the
will of Marian Hovey, late of Gloucester, an unmarried
woman, who died on August 28, 1898, and whose will was
admitted to probate on October 3, 1898.

The petition before us was filed in the Probate Court on
July 21, 1950, by Massachusetts Institute of Technology,
Museum of Fine Arts, and the President and Fellows of
Harvard College, hereinafter collectively called the chari-
ties.  They claim to be remaindermen of a trust under the

seventh paragraph of the will of said Marian Hovey. The petition asserts rights to large sums of money which the petitioners contend rightfully belong to the trust under the will of Marian Hovey.

By answer in the nature of a plea the respondent Anna Braden Morse sets up that the charities are not the remaindermen of the trust under the will of Marian Hovey, because the condition under which they were to take never happened. Augustus P. Loring, Junior, and Caleb Loring, as executors of the will of Cabot J. Morse, Senior, filed a similar plea. Both these pleas were sustained, and the petition of the charities was dismissed, on January 4, 1951. The charities appealed to this court.

By the seventh paragraph of her will, Marian Hovey gave the residue of her estate, including the property over which she had a power to appoint under the will of her late father, George O. Hovey, to trustees, to pay the net income to her brother Henry S. Hovey and her sister Fanny H. Morse. After the death of the sister, the income was to be paid in equal shares to her sons Cabot J. Morse and John Torrey Morse, Third.

The will continued: "At the death of the last survivor of my said brother and sister and my two said nephews, or at my death, if none of them be then living, the trustees shall divide the trust fund in their hands into two equal parts, and shall transfer and pay over one of such parts to the use of the wife and issue of each of my said nephews as he may by will have appointed; provided, that if his wife was living at my death he shall appoint to her no larger interest in the property possessed by me than a right to the income during her life, and if she was living at the death of my father, he shall appoint to her no larger interest in the property over which I have a power of disposition under the will of my father than a right to the income during her life; and the same limitations shall apply to the appointment of income as aforesaid."

The will continued: "If either of my said nephews shall leave no such appointees then living, the whole of the trust

fund shall be paid to the appointees of his said brother as aforesaid. If neither of my said nephews leave such appointees then living the whole trust fund shall be paid over and transferred in equal shares to" the petitioning charities.

Henry S. Hovey died unmarried and without issue in 1900. Fanny H. Morse died in 1922, leaving two sons, J. Torrey Morse and Cabot J. Morse. J. Torrey Morse died unmarried and without issue in 1928. That left Cabot J. Morse as the only person entitled to appoint under the will of Marian Hovey.

Cabot J. Morse died in August, 1946, testate, leaving his second wife Anna Braden Morse, who was born prior to the death of Marian Hovey, and a son by an earlier marriage, Cabot J. Morse, Junior, who himself died in September, 1948. Anna Braden Morse still survives. The will of Cabot J. Morse, Senior, contains the following: "Third: The power of appointment which I have under the wills of my aunt, Marian Hovey, and my uncle, Henry S. Hovey, both late of Gloucester, Massachusetts, I exercise as follows: I appoint to my wife, Anna Braden Morse, the right to the income during her lifetime of all of the property to which my power of appointment applies under the will of Marian Hovey, and I appoint to my wife the right during her widowhood to the income to which I would be entitled under the will of Henry S. Hovey if I were living." The will gave the residue to said Anna Braden Morse.

In *Welch* v. *Morse*, 323 Mass. 233, this court held that the will of Cabot J. Morse, Senior, was a valid exercise of his power as to income, although he did not appoint as to the principal.

The rights of the petitioning charities as remaindermen depend upon the proposition that Cabot J. Morse, Senior, did not leave an "appointee" although he appointed his wife Anna Braden Morse to receive the income during her life. The time when, if at all, the "whole trust fund" was to be paid over and transferred to the petitioning charities is the time of the death of Cabot J. Morse, Senior. At that time the whole trust fund could not be paid over and trans-

ferred to the petitioning charities, because Anna Braden Morse still retained the income for her life. We think that the phrase no "such appointees then living" is not the equivalent of an express gift in default of appointment, a phrase used by the testatrix in the preceding paragraph. *Corcoran* v. *Gage*, 289 Mass. 111, 113. *Jones* v. *Jones*, 304 Mass. 653, 658. *Matter of Crespi*, 158 Misc. (N. Y.) 383, 386.

In Restatement: Property, § 367 (2), it is said, with certain immaterial exceptions, that "where there is a special power and no gift in default of appointment in specific language, property not effectively appointed passes to those living objects to whom the donee could have appointed at the time of expiration of the power, unless the donor has manifested an intent that the objects shall receive the property only so far as the donee elects to appoint it to them." In Scott, Trusts, § 27.1, the author says, "Where there is no express gift over in default of appointment the inference is that the donor intended the members of the class to take even though the donee should fail to exercise the power. The inference is that he did not intend that they should take only if the donee should choose to exercise the power. . . . The cases are numerous in which it has been held that the members of the class are entitled to the property in equal shares where the donee of a power to appoint among them fails to exercise the power." See also Farwell, Powers (3d ed. 1916) 528; Kales, Estates Future Interests (1920) § 616.

The present case does not require us to determine the ultimate destination of the trust fund. It is enough for present purposes that the petitioning charities are not entitled to it. The allowance of counsel fees, costs and expenses is to be in the discretion of the Probate Court.

*Decree affirmed.*